UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**FILED**

DEC 0 2 2008

CLERK U.S. BANKRUPTCY,
ORLANDO DIVISION

IN RE:

GURVINDER SINGH UBEROI and
JASMINE UBEROI,
Debtors.
_____/

AUTOMATED PETROLEUM & ENERGY
CO., INC., a Florida corporation,
Plaintiff,
v.
GURVINDER S. UBEROI,
Defendant.
_____/

Case No.: 6:08-bk-04350-ABB

Adv. Proc. No.: 6:08-ap-00155-ABB

**MEMORANDUM OPINION GRANTING
OBJECTION TO DISCHARGEABILITY OF DEBT**

This matter came on for consideration of a Complaint to Determine Dischargeability of Debt (Doc. No.1) filed by Plaintiff, Automated Petroleum and Energy ("APEC") against Defendant, Guvinder S. Uberoi ("Uberoi"). An evidentiary hearing was held on October 21, 2008 at which counsel for the Plaintiff and counsel for the Defendant appeared. Testimony was elicited from Joyce Ann Jackson, Katherine Ann McKnight and Gurvinder Singh Uberoi. The parties were granted leave to submit supplemental legal memoranda and proposed findings of fact and conclusions of law in support of their positions. The Court makes the following Findings of Fact and Conclusions of Law after reviewing the pleadings and other documents filed herein, the evidence presented, hearing live argument, and being otherwise fully advised in the premises.

1

## FINDINGS OF FACT

### *Background of the Complaint*

Uberoi filed the chapter 7 case on May 28, 2008 ("Petition Date"). APEC filed this dischargeability action on August 6, 2008, contending Uberoi should be denied a discharge of certain obligations to APEC, because Uberoi's submitted fraudulent deposit receipts and failed to deposit the proceeds from the sale of APEC's fuel between June 5, 2007 and July 5, 2007. APEC alleges this constitutes larceny/theft and the willful and malicious injury to APEC and/or its property.

APEC requests and award of its attorney's fees and costs pursuant to Florida law, based upon the statutory scheme authorizing such in the event of violation of the theft statutes. Uberoi seeks an offset against APEC for a Lease security deposit that he had with APEC at the time that the Lease was terminated, as a credit against any nondischargeable claim for which he may be liable.

### *Pre-Petition Station Operations*

On August 17, 2005, APEC leased Uberoi real property located at 9495 S. Orange Blossom Trail, Orlando, Florida 32837 known as the "Taft Sunoco (427)" for use as a service station and/or convenience store ("Lease," Exhibit "1"). Uberoi entered into a Contract with APEC to sell APEC'S fuel to the public and to collect monies therefrom on APEC'S behalf ("Contract," Exhibit "2"). All funds collected by Uberoi on APEC's behalf were the exclusive property of APEC. For performing his duties under the Contract, Uberoi would receive a commission of six cents ($.06) for each gallon of fuel sold.

APEC initially received the net proceeds from fuel sales after applying credit card sales by electronic funds transfer ("EFT") from Uberoi's bank account on a daily basis. In November

2006, after several EFT'S were returned for insufficient funds, APEC changed the manner in which Uberoi accounted for sales proceeds. APEC prepared and emailed to Uberoi each morning a Station Report which identified the net amount due for the previous day's sales after credit card sales were applied. Uberoi was required to deposit each day the amount reflected in the Station Report into a special account APEC opened with Wachovia Bank and fax a copy of the deposit receipt(s) to APEC.

## *Fuel Payments Diverted by Uberoi*

The Wachovia account permitted APEC to track on-line the deposits made by its dealers by assigning a separate serial number to each. The serial numbers used by APEC corresponded to the dealer's station number; the Taft Sunoco was 427. The documents comprising Exhibit "3" are the Station Reports for sales of fuel that occurred at Taft Sunoco from June 1, 2007 through July 5, 2007. Between June 1, 2007 and July 5, 2007, Uberoi sold $329,858.47 of APEC'S fuel, after credit card sales were applied. Uberoi deposited $220,849.83 into the Wachovia account (Exhibits "5" and "6"), with $109,008.64 in sale proceeds unaccounted for. Uberoi did not sell any fuel after July 5, 2007.

Exhibit "4" consists of forty-four (44) deposit receipts faxed from Uberoi to APEC for fuel sales made between June 1, 2007 and July 1, 2007. Uberoi did not make any deposits into APEC'S Wachovia account or submit deposit receipts to APEC for fuel sold on July 2, 2007, July 3, 2007, or July 5, 2007. No monies were due to APEC for fuel sales made on July 4, 2007 because the credit card sales exceeded the total sales for that day. APEC'S representative, Kathy McKnight, testified from personal knowledge she recognized the writing at the top of each page of the deposit receipts as Uberoi's.

Uberoi's testimony that an employee created the counterfeit and fraudulent deposit receipts and stole the money, while Uberoi was in the hospital, is not credible. This would require belief that Uberoi's employee made the deposits; somewhere created counterfeit deposit receipts; made and delivered copies of the deposit receipts to Uberoi in the hospital, all so Uberoi could write "Attn: Kathy McKnight Taft Sunoco" on the top of each page; and instruct his employee return to Uberoi's station and fax the deposit receipts to APEC. Uberoi claims he learned for the first time on July 2, 2007 his employee had not made the deposits, but submitted counterfeit and fraudulent deposit receipts.

Nevertheless, Uberoi sold fuel for three (3) more days, but did not deposit any of the sale proceeds into APEC'S account or otherwise remit them to APEC. Uberoi was evicted from the Taft Sunoco on October 3, 2007. The affirmative defenses raised by Uberoi at trial to the assertion of the claims by APEC, based upon his employee's fraud, are not credible and should be overruled.

None of the deposit slips in Exhibit "4" are true and correct copies of original deposit receipts, but are counterfeit as evidenced by the fact: (a) ten (10) of the forty-four (44) deposit receipts submitted to APEC were for deposits that were never made and are also fraudulent; (b) none of the deposit information (the calendar date of the deposit, the time of the deposit, and the date the deposit was posted) on the thirty-four (34) receipts reflecting actual deposits is accurate when compared to copies of the actual deposit slips in Exhibit "6;" (c) the four digit number appearing to the right of the number 51262 found on both the deposit receipts and deposit slips only match six (6) of the thirty-four (34) times.

The amount of $109,008.64 is not dischargeable, based upon Uberoi's failure to deposit APEC'S sale proceeds constitute theft/larceny or willful conversion. APEC has demonstrated by

clear and convincing evidence Uberoi wrongfully took APEC's fuel receipts without consent and with the intent to convert the proceeds to his own use.

### *Uberoi's Request for Setoff of Security Deposit*

APEC seeks a determination the security deposit made by Uberoi held by APEC pursuant to the Lease and the Contract, should not be credited against the nondischargeable claim, but should be offset against other, prepetition claims under those agreements. Uberoi was required to place a $40,000.00 security deposit with APEC payable as follows: $25,000.00 at signing and $500.00 per month until the balance was paid in full (from September 2005 through February 2008 ("Security Deposit"). Uberoi did not pay the rent and Security Deposit payment from July 2007. APEC was holding $36,000.00 Security Deposit at the termination of the Lease, which secured Uberoi's performance under the Lease and the Contract.

A rent statement ("Statement of Account") was sent to Uberoi at the beginning of each month from September 2005. Commissions from fuel sales and other credits and rebates earned during the previous month were posted and applied against the current month's rent. The difference between the two would be electronically transferred either as a debit or credit in accordance with Article 3(e) 2 of the Contract.

> The deposit posted on June 14, 2007 in the amount of $7,597.27 as reflected in Exhibit "5" was for payment of the June 1, 2007 Statement of Account, which took into account a commission credit of $9,237.63 for sales made in May 2007.

Pursuant to the terms of the Contract and course of performance, commissions were not applied against fuel sales.

Pursuant to the Lease and the Contract, Uberoi remained liable for the payment of rent plus utilities and maintenance of the Taft Sunoco. Uberoi covenanted to indemnify and hold APEC harmless of any and all damages that APEC may incur with respect to Uberoi's leasing of

5

the premises. The Lease authorized APEC to declare the Lease accelerated and declare the balance of the rent reserved, as well as all the rent in arrears, as immediately due and payable. Therefore, the Lease entitles APEC to a claim for all damages, losses and expenses sustained as a result of the Uberoi's breach.

APEC's rights to payments from Uberoi are governed by the provisions of the Lease and the Contract. APEC's Security Deposit is an offset to a mutual debt owing by Uberoi to APEC that arose before the Petition Date against a claim of Uberoi against APEC. The Commission earned for fuel sales in June and July 2007 should be credited against rents and other charges owed by Uberoi from July 1, 2007 through October 3, 2007, the date Uberoi was evicted from the Taft Sunoco, and the Security Deposit is deemed credited against all other debts owed to APEC pursuant to the Lease and Contract, prior to the Petition Date. Uberoi is not entitled to have the Security Deposit credited by APEC against the obligation found to be nondischargeable. The affirmative defenses raised by Uberoi at trial to the assertion of the claims by APEC should be denied.

### *APEC's Motion for Attorneys' Fees*

APEC requests its attorney's fees and costs be awarded pursuant to Fla.Stat.§772.11 (2008) on the basis Uberoi violated Fla.Stat.§812.014(1).

> Theft (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
>
> (a) Deprive the other person of a right to the property or a benefit from the property.
>
> (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

A litigant may recover attorney's fees and costs only where such an award is provided for by enforceable contract or statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S. 240,

257 (1975). A bankruptcy court may award sanctions in an adversary proceeding pursuant to applicable law. In re Wille, 333 B.R. 891, 893 (Bankr. M.D. Fla. 2005).

> Fla. Stat.§772.11(2008). Civil remedy for theft or exploitation. (1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $ 200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $ 200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand ... Punitive damages may not be awarded under this section ... In awarding attorney's fees and costs under this section, the court may not consider the ability of the opposing party to pay such fees and costs. This section does not limit any right to recover attorney's fees or costs provided under any other law.

On July 11, 2007, APEC served a civil theft demand letter upon Uberoi pursuant to Fla.Stat.§772.11(2008). The attorney's fees and costs incurred by APEC are compensable by Uberoi pursuant to the Florida statutory scheme, in that they were incurred as a result of Uberoi's knowingly obtaining APEC's property with the intent to deprive the APEC of a right to the proceeds of fuel sales, or a benefit from such proceeds, in violation of Fla.Stat.812.014(1).

### CONCLUSIONS OF LAW

#### *Bankruptcy Code Sections 523(a)(4) and (a)(6)*

In a challenge to the dischargeability of a debt, the plaintiff must prove by a preponderance of the evidence that the debt is within one of the specifically enumerated exceptions under Section 523 of the Bankruptcy Code. Grogan v. Garner, 498 U.S. 279, 287 (1991). Without establishing the intent of the debtor, it is not possible to establish the elements necessary pursuant to 11 U.S.C. Section 523(a)(6). Section 523 provides in pertinent part:

7

> (a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
> (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny;
>     . . . .
> (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;

11. U.S.C. § 523(a)(4) and (6).

Section 523(a)(4) provides any debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny" is nondischargeable. Adamo v. Scheller (In re Scheller), 265 B.R. 39, 53 (Bankr. S.D. N.Y. 2001), and Great American Ins. Co. v. Graziano (In re Graziano), 35 B.R. 589, 594 (Bankr. E.D. NY 1983), what constitutes larceny for purposes of § 523(a)(4) is a question of federal law. "Larceny is the (1) wrongful taking of (2) property (3) of another (4) without the owner's consent (5) with intent to convert the property." Scheller, 265 B.R. at 53; Graziano, 35 B.R. at 594. APEC has demonstrated by clear and convincing evidence Uberoi wrongfully took APEC's fuel receipts without its consent and with the intent to convert the proceeds to his own use. The amount of $109,000.64 is nondischargeable pursuant to 11 U.S.C. § 523(a)(4).

Section 523(a)(6) provides any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity" is nondischargeable. The United States Supreme Court ruled in Kawaauhau v. Geiger, 523 U.S. 57, 118 S. Ct. 974 (1998) that to establish the requisite willful and malicious intent of Section 523(a)(6), a plaintiff must establish by a preponderance of the evidence the injury was intentional—that the debtor intended the consequences of his or her act. The Supreme Court explained, because "willful" modifies "injury" in Section 523(a)(6), nondischargeability requires conduct that inflicts an injury

intentionally and deliberately, "not merely . . . a deliberate or intentional *act* that leads to injury." Kawaauhau v. Geiger, 523 U.S. at 61-2.

The Supreme Court recognized Congress could have chosen other words such as "reckless" or "negligent" to modify "injury." The Court likened (a)(6) to an intentional tort as distinguished from negligent or reckless torts, and the Court held "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of 523(a)(6)." Kawaauhau, 523 U.S. at 64. APEC has demonstrated by clear and convincing evidence Uberoi's actions were willful and deliberate and constituted intent to deprive APEC of its property. The amount of $109,000.64 is nondischargeable pursuant to 11 U.S.C. § 523(a)(6).

### *Setoff of Security Deposit Not Permitted*

Uberoi argued that the Security Deposit should be applied to reduce any nondischargeable obligation that may be found. APEC seeks a determination that the Security Deposit should not be credited by APEC against the nondischargeable claim, but should be offset by APEC against its other, prepetition claims against Uberio pursuant to those agreements.

11 U.S.C. Section 553 provides, in pertinent part:

> (a) Except as otherwise provided in this section and in section 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case. . . .
> 11 U.S.C. § 553(a).

A lessor's right to payments from a debtor is governed by the provisions of the lease or other contract between the lessor and the debtor. In re Q-Masters, Inc., 135 B.R. 157, 160 (Bankr. S.D. Fla. 1991). Pursuant to the Lease and the Contract, Uberoi remained liable for the payment of rent plus utilities and maintenance of the Taft Sunoco. Uberoi covenanted to indemnify and hold APEC harmless from any and all damages that APEC may incur with respect

9

to Uberoi's leasing of the premises. The Lease authorized APEC to declare the Lease accelerated and declare the balance of the rent reserved, as well as all the rent in arrears, as immediately due and payable. Therefore, the lease agreement entitles APEC to a claim for all damages, losses and expenses sustained as a result of the Uberoi's breach.

APEC's rights to payments from Uberoi are governed by the provisions of the Lease and the Contract. APEC's Security Deposit is a valid offset to a mutual debt owing by Uberoi to APEC that arose before the Petition Date against a claim of Uberoi against APEC that arose before the Petition Date. The Commission earned for fuel sales in June and July 2007 should be credited against rents and other charges owed by Uberoi from July 1, 2007 through October 3, 2007, the date Uberoi was evicted from the Taft Sunoco, and the Security Deposit shall be deemed to have been credited against all other debts owed to APEC pursuant to the Lease and Contract, prior to the Petition Date. Uberoi is not entitled to have the Security Deposit credited by APEC against the obligation found to be nondischargeable. The affirmative defenses raised by Uberoi at trial to the assertion of the claims by APEC are denied.

### *APEC's Motion for Award of Attorneys' Fees*

APEC requests an award of their attorney's fees and costs pursuant Fla.Stat.§772.11 (2008) on the basis Uberoi violated Fla.Stat.§812.014(1). Theft is defined as follows:

> Theft (1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently (a) Deprive the other person of a right to the property or a benefit from the property. (b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

A litigant may recover attorney's fees and costs only where such an award is provided for by enforceable contract or statute. Alyeska Pipeline Serv. Co. v. Wilderness Soc'y, 421 U.S.

240, 257 (1975). A bankruptcy court may award sanctions in an adversary proceeding pursuant to applicable law. In re Wille, 333 B.R. 891, 893 (Bankr. M.D. Fla. 2005).

> Fla.Stat.§772.11(2008). Civil remedy for theft or exploitation (1) Any person who proves by clear and convincing evidence that he or she has been injured in any fashion by reason of any violation of ss. 812.012-812.037 or s. 825.103(1) has a cause of action for threefold the actual damages sustained and, in any such action, is entitled to minimum damages in the amount of $ 200, and reasonable attorney's fees and court costs in the trial and appellate courts. Before filing an action for damages under this section, the person claiming injury must make a written demand for $ 200 or the treble damage amount of the person liable for damages under this section. If the person to whom a written demand is made complies with such demand within 30 days after receipt of the demand, that person shall be given a written release from further civil liability for the specific act of theft or exploitation by the person making the written demand ... Punitive damages may not be awarded under this section .... In awarding attorney's fees and costs under this section, the court may not consider the ability of the opposing party to pay such fees and costs. This section does not limit any right to recover attorney's fees or costs provided under any other law.

On July 11, 2007, APEC served a civil theft demand letter upon Uberoi pursuant to Fla. Stat.§772.11(2008). The attorney's fees incurred by APEC are compensable by Uberoi pursuant to the Florida statutory scheme in that they were incurred as a result of Uberoi's knowingly obtaining APEC's property with the intent to deprive the APEC of a right to the proceeds of fuel sales or a benefit from such proceeds in violation of Fla.Stat.§812.014(1).

## CONCLUSION

APEC has established all the elements of 11 U.S.C. §§ 523(a)(4) and (a)(6) and is entitled to a judgment that the undelivered proceeds of the sale of APEC's fuel between June 5, 2007 July 5, 2007 ($109,008.64) was incurred through larceny/theft and willful and malicious injury to APEC and/or its property and is not dischargeable; has established that Uberoi is not entitled to offset the Security Deposit against the resulting nondischargeable claim and no credit therefor

11

shall be given to Uberoi; and has established that it is entitled to reasonable attorney's fees and costs in accordance with Fla.Stat.§722.11(2008).

A separate Judgment in favor of APEC and against Uberoi consistent with this Memorandum Opinion shall be entered contemporaneously.

DONE AND ORDERED in Orlando, Florida, on the 2nd day of December 2008.

ARTHUR B. BRISKMAN
United States Bankruptcy Judge